IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IVAN JELEZNII,

        Plaintiff,                              No. CIV S-06-1886 DAD

    v.

MICHAEL J. ASTRUE,                      <u>ORDER</u>
Commissioner of Social Security,[1]

        Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

        Plaintiff Ivan Jeleznii, Jr. applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act) on January 29, 2004, alleging disability since his birth on September 26, 1978. (Transcript (Tr.) at 55-58.) Plaintiff claimed disability based on

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

developmental delay and on heart, back, and breathing problems. (Tr. at 61.) Plaintiff subsequently amended his application to allege an onset date of January 29, 2004. (Tr. at 229.) Plaintiff's application was denied initially on May 19, 2004 and upon reconsideration on July 19, 2004. (Tr. at 32-47.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on April 25, 2005. (Tr. at 48-51, 227-37.) Plaintiff, represented by a non-attorney representative, testified through a Russian language interpreter. (Tr. at 227-36.) A vocational expert was present at the hearing but did not testify. (Tr. at 227, 229.) In a written decision dated June 23, 2005, ALJ Robert K. Rogers, Jr. determined that plaintiff was not disabled. (Tr. at 13-26.) The ALJ entered the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has the following medically determinable impairment(s): slight thoracic scoliosis and reversal of the normal cervical lordosis.

3. The claimant does not have any impairment, or combination of impairments, that significantly limits his ability to perform basic work-related activities; therefore, the claimant does not have a "severe" impairment (20 CFR § 416.920).

4. The undersigned finds the claimant's allegations and those of his father regarding his limitations are not totally credible for the reasons set forth in the body of the decision and unique to each individual.

5. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(c)).

(Tr. at 25-26.)

On July 7, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 5-9.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 22, 2006.

/////

/////

# LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, §§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

/////

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff seeks reversal and remand for immediate payment of benefits. In support of his motion for summary judgment, plaintiff presents the following issues:

1) Can a step two denial that rests on credibility determinations, including disbelieving apparently valid psychometric testing and expert opinion, be upheld despite such evidence?

2) Can benefits be awarded on remand in these circumstances if evidence supports disability and no evidence directly contradicts it?

(Pl.'s Mot. for Summ. J. at 5-6.) The undersigned has construed these issues presented as an argument by plaintiff that the ALJ erred when he determined at step two of the sequential evaluation process that plaintiff does not have any impairment that is severe.

Plaintiff's argument commences with a "caveat" that, because he believes the psychological evidence alone supports a finding of disability, his discussion "ignores, without waiving, the argument that the decision's negative step two determination with respect to

evidence of non-psychological impairment also erred." (Id. at 6.) In light of plaintiff's decision to ignore the ALJ's findings regarding non-psychological impairments, the undersigned will address only plaintiff's argument that the ALJ erred in failing to find that plaintiff has a severe psychological impairment.

Defendant argues that the ALJ's findings are correct because plaintiff failed to establish any severe mental or physical impairment. Defendant also argues that plaintiff's subjective complaints were properly considered. For these reasons, defendant contends that there is no cause for remand or reversal and that the ALJ's decision must be affirmed.

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities for seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

The Supreme Court has held that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the severity regulation, i.e., step two of the sequential evaluation process, must not be used to prematurely disqualify a claimant without determining whether the claimant's impairments prevent him from engaging in his prior work or other substantial gainful

employment that, in light of his age, education, and experience, might be available to him.  Id. at 158 (O'Connor, J., concurring).

To prevent such premature disqualification, the Ninth Circuit has held that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290, and adding emphasis).  "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process."  Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3.

> In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

SSR 85-28, 1985 WL 56856, at *4.

"Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'"  Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb. 11, 2008) (describing claimant's burden at step two as "low").

The plaintiff in this case was born on September 26, 1978, and entered the United States as a refugee from the Republic of Moldova on September 23, 2003, when he was almost 25 years old.  (Tr. at 230-31.)  He lives in a home with his parents, both of whom receive SSI.  (Tr. at 56.)  Plaintiff completed six years of school in Moldova and has never worked.  (Tr. at 61, 67.)  In the United States ,he has failed the driver's test twice.  (Tr. at 235.)  At the time of the administrative hearing, plaintiff had been studying English at an ESL school for three hours a day for one and a half years and had not progressed to a higher level.  (Tr. at 233-34.)

/////

As noted supra, when plaintiff applied for SSI, he alleged disability due to developmental delay as well as heart, back, and breathing problems. (Tr. at 61.) A function report completed by plaintiff's father indicates that plaintiff's daily activities are very limited. (Tr. at 70-75.) Plaintiff's father reports that plaintiff needs to be reminded to take his medications, is unable to prepare meals, does not do any household chores, does not go out alone, does not drive, cannot pay bills, cannot count change, cannot use a checkbook, does not get along with his family, has problems with memory and concentration, is able to pay attention for only about 15 minutes, does not follow written or spoken instructions very well, and does not get along with authority figures very well. (Tr. at 70-78.) A daily activities questionnaire completed by plaintiff is consistent with his father's function report and also indicates that he does not watch TV but listens to music on the radio sometimes, seldom reads, tried to study the rules for a driver's permit but was unable to remember them, cannot concentrate, cannot remember things, and cannot finish things by himself. (Tr. at 79-84.)

From October 2003 to November 2004, plaintiff was treated by Pavel Polskiy, M.D. for his complaints of headaches and back, shoulder, knee, and chest pain. Defendant asserts that Dr. Polskiy's treatment notes do not note that plaintiff complained of developmental delay and do not indicate any cognitive defects. (Def.'s Mot. for Summ. J. at 2, citing tr. at 116-33, 165-70, 187-89.) Defendant cites Dr. Polskiy's mental status examination of plaintiff on July 27, 2004, which concluded with the assessment "Normal psychiatric exam." (Id., citing tr. at 188.) Dr. Polskiy's medical records include a report by Vladimir Rafanov, M.D., a neurologist to whom Dr. Polskiy referred plaintiff for his complaints of neck and thoracic pain. (Tr. at 166-71.) The report of Dr. Rafanov's May 15, 2004 examination indicates as part of plaintiff's medical history "mild mental retardation." (Tr. at 167.)

In 2004, plaintiff was referred to a psychologist for cognitive testing on a referral pursuant to his application for SSI. Kimberly Stearns, Ph.D., found plaintiff a vague historian and difficult to interview because he refused to answer questions he deemed too personal and

denied having any significant psychiatric symptoms. (Tr. at 138-39.) Dr. Stearns was unable to rule out malingering because tests results administered for that purpose were inconclusive; the results of one test "failed to suggest the presence of malingering," while the results of the other "are consistent with the possible presence of malingering." (Tr. at 140.) Dr. Stearns found it possible that plaintiff suffers from genuine cognitive dysfunction and cautioned against reliance on her test results, given plaintiff's lack of cooperation and the brevity of her one-time examination. (Tr. at 141-42.)

In January 2005, a disability case management worker at General Assistance referred plaintiff to Alta California Regional Center to be assessed for eligibility for services based on suspected mental retardation. (Tr. at 217-18.) Kim Litzenberg, LCSW, interviewed plaintiff on February 9, 2005. (Tr. at 218-20.) Ms. Litzenberg's intake social assessment report found that plaintiff presented with academic and functional/adaptive behavior skill deficits. She recommended further review of records and additional assessments and diagnoses to determine his eligibility for services at Alta California Regional Center. (Tr. at 220.)

Pursuant to Ms. Litzenberg's recommendation, plaintiff was evaluated by Jeffrey E. Miller, Ph.D. (Tr. 193-201.) Dr. Miller interviewed plaintiff's parents for 45 minutes on April 4, 2005. (Tr. at 193.) Plaintiff did not want to enter Dr. Miller's office on that day and stayed in the hallway while Dr. Miller interviewed his parents. (Tr. at 196.) Plaintiff then entered the office but became angry and left. (Id.) Dr. Miller went to plaintiff's home and interviewed and evaluated him through an interpreter for one and a half hours on April 8, 2005. (Tr. at 193, 196.) Dr. Miller diagnosed oppositional defiant disorder on Axis I and mild mental retardation on Axis II, with a GAF score of 50. (Tr. at 200.) Dr. Miller found plaintiff to be a mildly depressed, resentful, and oppositional individual prone to angry outbursts. (Id.) He also found that plaintiff was easily distracted and had difficulty completing tasks on his own. (Id.) In Dr. Miller's opinion, plaintiff's cognitive deficits, behavior problems, and medical issues made it highly unlikely that he would be capable of gainful work activity. Dr. Miller believed that

plaintiff might be able to participate in a supported-employment position if eligible for services at Alta California Regional Center. (Id.) LCSW Litzenberg subsequently found plaintiff mentally retarded and eligible for services at Alta California Regional Center. (Tr. at 202.)

The ALJ found plaintiff and his parents less than fully credible and rejected plaintiff's subjective complaints, the information provided by his parents, and the arguments of plaintiff's representative. The ALJ gave little weight to Dr. Miller's opinion and even less weight to LCSW Litzenberg's opinions. (Tr. at 16-25.) The ALJ "accorded significant evidentiary [sic] to Dr. Stearns [sic] observations of malingering," despite the fact that one of the two tests for malingering administered by Dr. Stearns "fail[ed] to suggest the presence of malingering" while the other produced results merely "consistent with the possible presence of malingering." (Tr. at 24, 140.)

The undersigned finds that the record contains evidence that plaintiff has a mental impairment that constitutes more than a slight abnormality. In reaching this conclusion, the undersigned is mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). See also Edlund, 253 F.3d at 1158. Here, the ALJ's decision not to include plaintiff's mental impairment as a severe impairment at step two is not supported by substantial evidence in the record as a whole. See Schneider, 223 F.3d at 973; Morgan, 169 F.3d at 599). Thus, the ALJ erred at step two of the sequential evaluation by failing to recognize plaintiff's mental impairment as severe at step two.

While the evidence related to plaintiff's mental impairment may not establish disability at step three, and may or may not ultimately lead to a finding of disability in combination with plaintiff's other impairments, it was error not to recognize plaintiff's mental impairment as severe at step two when the medical evidence does not clearly establish that plaintiff's mental impairment has no more than a minimal effect on his ability to work.

/////

The undersigned finds that "adjudication must continue through the sequential evaluation process." SSR 85-28, 1985 WL 56856, at *3. Remand is required so that the ALJ can proceed beyond step two of the sequential evaluation process with respect to plaintiff's severe mental impairment and consider the impairment in combination with all of plaintiff's impairments, whether severe or not. See Webb, 433 F.3d at 688 (remanding for further proceedings where "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that Webb's claim was 'groundless'").

## CONCLUSION

In light of the remand required by the ALJ's error at step two, the undersigned will not address plaintiff's argument that the evidence of record establishes disability at step three or step five. See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility."). The record is not sufficiently developed for such a determination by the court. See Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

On remand, the ALJ will necessarily be required to consider whether plaintiff's severe mental impairment meets all of the requirements of any listed impairment and, if not, to determine plaintiff's residual functional capacity in light of all of his impairments and the entire record, and to consider whether plaintiff is capable of performing any work in the national economy. If the sequential evaluation proceeds to step five, the ALJ shall question a vocational expert in a manner that properly takes into account all limitations on plaintiff's ability to engage in work-related functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment). "Where a claimant suffers only non-exertional limitations,

the grids are inappropriate, and the ALJ must rely on other evidence." Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). Here, it would appear clear that plaintiff's limitations are, in large part, if not entirely, non-exertional. In such circumstances, the grids will not "accurately and completely describe the claimant's abilities and limitations" and will not take into account the limitations imposed his impairments. Reddick v. Chater, 157 F. 3d 715, 729 (9th Cir. 1998); Burkhart, 856 F.2d at 1340.

Accordingly, IT IS ORDERED that:

1. Plaintiff's March 20, 2007 motion for summary judgment (Doc. No. 16) is granted;

2. Defendant's April 20, 2007 cross-motion for summary judgment (Doc. No. 17) is denied;

3. The decision of the Commissioner is reversed; and

4. This case is remanded for further proceedings consistent with the analysis set forth herein.

DATED: April 9, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/jeleznii1886.order